OPINION
{para: 1} Donnell Wheeler appeals from a judgment of the Montgomery County Court of Common Pleas, Juvenile Division, terminating his parental rights and granting permanent custody of his minor child, D.W., to Montgomery County Children Services ("MCCS"). Wheeler contends that the trial court's judgment is against the manifest weight of the evidence. Valaria Castle, the child's mother, did not appeal from the *Page 2 
judgment.
 {¶ 2} We conclude that the evidence in the record is sufficient to support the trial court's award of permanent custody of D.W. to MCCS. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 3} D.W. was born on September 23, 2004. On the following day, MCCS filed a dependency complaint, alleging that MCCS had a long history with D.W.'s mother, including that MCCS had obtained permanent custody over three of Castle's other children and that two others are in the custody of a relative. The complaint indicated that Castle had just been released from prison and MCCS needed "additional time to assess [her] current condition and stability before it can be determined whether it would be safe for this child to be in her care." MCCS also filed a motion for "reasonable efforts by-pass," pursuant to R.C.2151.419(A)(2), seeking a determination that the agency did not have to make reasonable efforts to return D.W. to Castle. MCCS later withdrew the motion for a reasonable efforts by-pass. The court immediately granted interim temporary custody to MCCS.
 {¶ 4} On September 27, 2004, a magistrate held a shelter-care hearing, attended by Castle, MCCS, and a guardian ad litem. Following the shelter-care hearing, the magistrate recommended that interim temporary custody of D.W. be awarded to MCCS. Later, an adjudicatory and dispositional hearing on the complaint was conducted, and the magistrate found D.W. to be a dependent child and approved a case plan established by MCCS, which Castle had signed. Another hearing was scheduled and held, following *Page 3 
which the trial court awarded temporary custody of D.W. to MCCS. Temporary custody was later extended.
 {¶ 5} In January 2006, MCCS filed a motion for permanent custody of D.W. After several continuances, a hearing on the motion was held in September 2006. Thereafter the magistrate awarded permanent custody of D.W. to MCCS, and Wheeler filed objections to the magistrate's decision.
 {¶ 6} The trial court overruled Wheeler's objections to the magistrate's decision, and adopted the magistrate's decision as its own. With regard to Wheeler, the court found that MCCS had made reasonable efforts to reunify the child with him by providing case plan objectives. The court found that Wheeler had not substantially completed his case plan, because he did not follow through with substance abuse treatment, he had drug screens that tested positive for marijuana, and he provided no verification of attending AA-NA meetings. The court acknowledged that Wheeler had obtained the required parenting psychological assessment, provided verification of income and housing, complied with the terms of his probation, established paternity, and visited regularly with D.W. The court concluded that reunification with Wheeler was not possible within a reasonable amount of time and that granting permanent custody to MCCS was in D.W.'s best interest.
 {¶ 7} Wheeler appeals, raising one assignment of error.
 II {¶ 8} Wheeler's sole assignment of error is as follows:
 {¶ 9} "THE TRIAL COURT ERRED BECAUSE ITS JUDGMENT IN AWARDING PERMANENT CUSTODY OF THE MINOR CHILD TO MONTGOMERY COUNTY *Page 4 
CHILDREN'S SERVICES WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 10} In his assignment of error, Wheeler contends that the trial court's decision to award permanent custody of D. W. to MCCS is against the manifest weight of the evidence. He contends that he satisfied most of his case plan objectives and that his smoking of marijuana is insufficient, by itself, to warrant the termination of his parental rights.
 {¶ 11} "In a proceeding for the termination of parental rights, all of the court's findings must be supported by clear and convincing evidence." In re J.R., Montgomery App. No. 21749, 2007-Ohio-186,]}9, citing R.C. 2151.414(E). "The court's decision to terminate parental rights, however, will not be overturned as against the manifest weight of the evidence if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established." Id., citations omitted.
 {¶ 12} R.C. 2151.414(B) sets forth the circumstances under which a court may grant permanent custody of a child to a children services agency. Pursuant to R.C. 2151.414(B)(1)(a), the court may grant permanent custody of a child if the court determines, by clear and convincing evidence, that: (1) it is in the best interest of the child to grant permanent custody of the child to the children services agency; (2) the child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999; and (3) the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents. If the child has been in the custody of the children services *Page 5 
agency for twelve or more months of a consecutive twenty-two month period, the court need only determine whether permanent custody is in the child's best interest. R.C. 2151.414(B)(1)(d).
 {¶ 13} Here, the record establishes that D.W. had been in temporary custody for more than twelve months of a consecutive twenty-two month period at the time that MCCS filed its motion for permanent custody. Accordingly, the trial court was not required to find that D.W. could not be placed with either parent within a reasonable time or should not be placed with the parents. In re C. 1/1/. , 104 Ohio St.3d 163,166-167, 2004-Ohio-6411, 818 N .E.2d 1176,1179, at]}21. The trial court only had to consider whether permanent custody was in D.W.'s best interest.
 {¶ 14} Under R.C. 2151.414(D), the best interest of the child encompasses "all relevant factors," which includes:
 {¶ 15} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 16} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 17} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 18} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the *Page 6 
agency;
 {¶ 19} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 20} The factors in R.C. 2151.414(E)(7) through (11) include: convictions of various crimes like homicide, assault and child endangerment; withholding food or medical treatment from a child; abandonment of the child; placing the child at substantial risk of harm two or more times by drug or alcohol abuse and refusal of treatment; and involuntary termination of parental rights with regard to a sibling. None of these factors apply in this case.
 {¶ 21} On appeal, Wheeler asserts that he substantially completed his case plan and that his "only sin appears to be smoking marijuana." He states: "A key issue for this Court to determine is whether the failure of a parent to complete substance abuse treatment relating to marijuana automatically renders him/her unable to adequately parent a child." Wheeler argues that there is no evidence that his use of marijuana impaired his ability to "exercise parenting time with his child." Wheeler supports his assertion with two cases, neither of which involves Ohio law.
 {¶ 22} Upon review of the record, we agree with the trial court that there is clear and convincing evidence that Wheeler failed to substantially complete his case plan and that awarding permanent custody to MCCS is in D.W.'s best interest. Of relevance to this appeal, the case plan required Wheeler to demonstrate emotional and psychological stability. He was required to complete a psychological and parenting assessment and follow all recommendations, complete a drug assessment and drug treatment program, provide verification of employment and stable housing, comply with the terms of his *Page 7 
probation, and establish paternity. Jennifer Tuttle, the ongoing caseworker for D.W. at MCCS, testified at the permanent custody hearing that these requirements included completing random drug screens and participating in AA-NA meetings. Wheeler did not participate in the creation of the case plan in October 2004, nor did he sign it at that time. Although Wheeler signed the case plan in July 2005, Tuttle indicated then that he was not interested in working on the case plan. According to Tuttle, Wheeler began to work on the objectives in December 2005.
 {¶ 23} According to Tuttle, Wheeler was referred to Crisis Care for a substance abuse assessment, which recommended the Center for Alcoholism and Drug Addiction Services ("CADAS"). Wheeler informed Tuttle that he had completed CADAS in 2004, but was asked to leave the program because of an anger problem. In February 2006, Tuttle referred Wheeler to Consumer Advocacy Model ("CAM") for an assessment and on-going treatment. Wheeler was discharged from CAM in August 2006 "because he was not making regular contact with his counselor and case manager. In fact, he hadn't seen his counselor the entire six months that he was working with CAM." Wheeler also failed to provide Tuttle with verification of attending AA-NA meetings. Wheeler's June 2006 random drug screen tested positive for marijuana. In fact, Wheeler informed Tuttle that he was still using marijuana.
 {¶ 24} As acknowledged by the trial court, Tuttle also testified that Wheeler had completed the parenting assessment, that he had appropriate housing in a one-bedroom apartment, that his Social Security income was sufficient to support himself and D.W., and that he was meeting consistently with his probation officer. Wheeler visited with D.W. for two hours weekly since September 2005, and he had overnight weekend visits with his two *Page 8 
other children. Tuttle indicated that Wheeler had failed to complete only his substance abuse objectives.
 {¶ 25} Dr. Reginald Jones, a clinical psychologist, performed a psychological evaluation of Wheeler in March and April 2006. Based on the clinical interview, Dr. Jones believed that Wheeler "was functioning below the average range" and that it appeared he had a substance abuse problem involving alcohol and marijuana. The psychological tests revealed that Wheeler was mildly mentally retarded and that his knowledge of normal child development was below average. Wheeler's knowledge of basic child behavior management techniques was also limited. Dr. Jones testified that it appeared that Wheeler had adequate bonding with D.W., but that he would not be "a suitable candidate for sole custody." Dr. Jones questioned Wheeler's ability to provide adequate care over "a sustained period of time." Dr. Jones explained that his opinion was based on Wheeler's below average intellectual functioning and his substance abuse problem. As for Wheeler's substance abuse problem, Dr. Jones stated that Wheeler denied having a substance abuse issue yet later indicated a greater use of alcohol. Wheeler had further stated to Dr. Jones that "if he had the money, he would use [marijuana] every day."
 {¶ 26} Based on Tuttle and Dr. Jones's testimony, the record supports the trial court's conclusion that Wheeler had not completed his case plan and that his failure to satisfy the substance abuse treatment requirement was a substantial impediment to his ability to care for D.W. Wheeler denied that he had a substance abuse problem during his psychological assessment. (His arguments on appeal also appear to minimize the effect of his drug use.) Yet, throughout his involvement with MCCS, Wheeler continued to use marijuana, resulting in a positive drug screen in June 2006 and his discharge from CAM in *Page 9 
August 2006. According to Dr. Jones, Wheeler indicated that he would use marijuana daily if he could afford to do so. This suggests that Wheeler is more than just a casual user of marijuana, and that his dependency upon it may lead him, as the State suggests, into unsavory venues and situations. Coupled with Wheeler's subnormal intelligence, below average knowledge of normal child development and Dr. Jones's opinion that Wheeler likely could not be the sole care provider for D.W. for a sustained period of time, the trial court reasonably concluded that Wheeler's marijuana use was severe enough to render him incapable of caring for D.W. for the foreseeable future and that permanent custody to MCCS was in D.W.'s best interest.
 {¶ 27} Moreover, the record indicates that D.W. has been in foster care since birth, he was almost two years old at the time of the hearing, and he had bonded to his foster parents. Tuttle reported D.W. to be a "happy, outgoing child." Although Wheeler's mother had been investigated as a possible placement for D.W., her home study did not get approved because of a past child endangerment charge. Tuttle acknowledged Wheeler's mother had recently been certified by the Ohio Department of Child and Family Services as a child care provider, but she stated that child care certification and home studies had different criteria. The court reasonably concluded that D.W. needed a legally secure placement that could only be provided by permanent custody to MCCS. The guardian ad litem also recommended permanent custody to MCCS.
 {¶ 28} In sum, the record clearly and convincingly supports the trial court's determination that Wheeler had failed to substantially complete his case plan and that granting permanent custody of D.W. to MCCS was in the child's best interest.
 {¶ 29} Wheeler's sole assignment of error is overruled. *Page 10 
 III {¶ 30} Wheeler's sole assignment of error having been overruled, the judgment of the trial court is Affirmed. BROGAN and GRADY, JJ., concur. *Page 1